UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FARDAD VAHDAT,

Petitioner,

v.

JOSEPH FREDEN, *in his official capacity as Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement*, et al.,

Respondents.

---

**DECISION AND ORDER**

25-CV-0584-MAV

Petitioner Fardad Vahdat, a citizen of Iran, has been detained at the Buffalo Federal Detention Facility ("BFDF") since June 23, 2025. ECF No. 8-1 at ¶ 22. He filed an initial petition for a writ of habeas corpus under 28 U.S.C. § 2241 on July 3, 2025, raising two claims for relief—first "to prevent the government from removing [him] from the United States when it has no legal authority to do so"; and second to assert that his "detention is in violation of the regulations, contravenes the statutory basis for post-order detention[,] and violates procedural and due process protections." ECF No. 1 at 9–10.[1] Respondents filed a motion to dismiss the initial petition on August 14, 2025 (the "First MTD"). ECF No. 8.

On November 18, after filing extensions had been granted, Petitioner filed an opposition to the First MTD as well as an amended petition, which raised a third claim—indefinite detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).

---

[1] Citations to page numbers refer to the pagination generated by the CM/ECF system at the top of filed pages.

ECF Nos. 14, 15; *see* ECF Nos. 10–13, 16. Respondents moved to dismiss the *Zadvydas* claim on December 9, 2025 (the "Second MTD"). ECF No. 17. Through email correspondence with the Court, the parties thereafter clarified that they intended to rely on the prior briefing as to Counts I and II contained in the initial petition, and that the amended petition and the Second MTD were intended to supplement, not replace, the prior briefing to focus specifically on Petitioner's third claim under *Zadvydas*, which the Court elected not to disturb. *See* ECF No. 18 (text order adopting the parties' agreed-to extensions of the ordered briefing schedule). *Cf.* Fed. R. Civ. P. 15(a), (d). On December 17, Petitioner filed an opposition to the Second MTD. ECF No. 19. On February 17, 2026, Petitioner filed a notice of supplemental authority. ECF No. 20.

For the following reasons, Respondents' First MTD is granted. Counts I and II—the balance of the initial petition, ECF No. 1, are thus dismissed. Respondents' Second MTD, seeking dismissal of Petitioner's *Zadvydas* claim, is denied to facilitate efficient supplemental argument on whether there is a significant likelihood of removal in the reasonably foreseeable future at this stage.

## BACKGROUND

Petitioner alleges very few facts in his submissions. The following facts are largely taken from information submitted in support of Respondents' motion to dismiss from Petitioner's immigration file as reviewed and produced by an Immigration and Customs Enforcement ("ICE") official—none of which Petitioner contests. ECF No. 8-1 at ¶¶ 1–2.

Petitioner, a citizen of Iran, "was admitted to the United States on June 26, 2007, and later obtained Lawful Permanent Resident status on January 7, 2009." *Id.* at ¶ 5. Between November 2007 and October 2013, Petitioner was charged with several criminal offenses and was convicted of two. *Id.* at ¶¶ 6–13. By Notice to Appear dated June 17, 2014, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner, charging him with being subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.* at ¶ 14. On February 1, 2016, while Petitioner was in criminal custody, an immigration judge ordered Petitioner be removed to Iran. *Id.* at ¶ 15. Petitioner withdrew his application for withholding of removal, but the immigration judge did grant Petitioner's application for deferral of removal under the Convention Against Torture ("CAT"), thus preventing Respondents from removing him to Iran. *Id.* Neither party reserved appeal, *id.*, and it appears that Petitioner's deferral of removal to Iran remains in effect, *see id.*

A Warrant of Removal/Deportation was issued as to Petitioner on February 24, 2016, while Petitioner was incarcerated on a state criminal conviction. *Id.* at ¶¶ 15–17. Petitioner was released from state custody on December 4, 2017. *Id.* at ¶ 17. ICE did not then take Petitioner into custody. *See id.* at ¶¶ 17–20. Approximately a month later, Petitioner returned to state custody for approximately one year due to a parole violation. *Id.* at ¶¶ 18–19.

Upon his subsequent release from state custody, ICE again did not take Petitioner into custody and instead issued an Order of Supervision ("OSUP"), dated

February 28, 2019. *Id.* at ¶ 20. The Order of Supervision states that "[b]ecause the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions." ECF No. 8-2 at 24. The conditions identified in the OSUP included, *inter alia*, that Petitioner must appear in person and submit to a medical or psychiatric examination upon ICE's request, that Petitioner was prohibited from traveling outside New York State for more than 48 hours without first notifying and receiving approval from ICE, and that Petitioner assist ICE in obtaining any necessary travel documents. *Id.* On July 25, 2019, ICE issued an Enforcement and Removal Operations ("ERO") Delegation Order,[2] with the subject "Re-delegation of certain detention and removal authority," stating that "ERO may execute a removal order [to a third country] six [] or more hours after service of the Notice of Removal." ECF No. 14 at 14 (emphasis omitted); *see* ECF No. 8-1 at ¶ 21; ECF No. 8-2 at 28–29.

On June 23, 2025, ICE arrested Petitioner in front of his home. ECF No. 8-1 at ¶ 22. Petitioner was served with a Notice of Revocation of Release ("2025 Revocation Notice"), and thereafter "was given a pre-detention interview regarding his revocation of his Order of Supervision." ECF No. 8-2 at 32–34; *see* ECF No. 8-1 at ¶ 22. The 2025 Revocation Notice states that Petitioner "will be taken into custody at this time" "based on a review of [his] file." ECF No. 8-2 at 33.

---

[2] *Enforcement and Removal Operations*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/ero (last visited September 17, 2026) ("ERO manages all aspects of the immigration enforcement process, including the identification, arrest, detention and removal of aliens who are subject to removal or are unlawfully present in the U.S.").

As noted, Petitioner filed his initial petition for a writ of habeas corpus on July 1, 2025, having been detained on June 23, 2025. ECF No. 1. Count I challenges Respondents' authority to remove him, and Count II makes several conclusory assertions that his detention is unlawful, including for example, alleging that his detention "is in violation of the regulations" without citing or discussing any federal regulations. ECF No. 1 at 9–10. "On August 1, 2025, ICE prepared for [Petitioner's] possible removal to country other than Iran." ECF No. 8-1 at ¶ 23. On November 18, less than five months after he had been taken into custody, Petitioner filed what the parties agreed would be a supplemental petition, raising a *Zadvydas* claim for indefinite detention. ECF No. 15. As confirmed in September 2026, Petitioner "remains in ICE custody at the [BFDF] pending his removal from the United States."[3] *Id.* at ¶ 24.

## LEGAL STANDARDS

### I. Jurisdiction Over § 2241 Petitions

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has "the burden of sustaining his allegations by a preponderance of evidence." *Walker v. Johnston*, 312 U.S. 275, 286 (1941). Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority,

[3] In September 2026, the Court asked the parties via email to confirm Petitioner's custody status because ICE's public "Detainee Locator" website returns no results when searching for him. Both parties confirmed Petitioner remains detained at BFDF. Respondents offered no explanation for why Petitioner's detention location was not made available through their system.

but jurisdiction does not extend to "discretionary judgment," "action," or "decision" by the Attorney General with respect to either detention or removal. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citing, *inter alia*, *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## II. Respondents' Two Motions to Dismiss

"'A motion to dismiss a habeas petition is reviewed under the same standard as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6).'" *Petrova v. U.S. Dep't of Homeland Sec.*, No. 2:25-CV-00240, 2025 WL 2772764, at *10 (D. Vt. Sept. 26, 2025) (quoting *Pittman v. Cook*, 2020 WL 2840256, at *3 (D. Conn. June 1, 2020)). To survive a motion to dismiss under Rule 12(b)(6), the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, including in a habeas context, a court "'may consider all papers and exhibits appended to the [petition], as well as any matters of which judicial notice may be taken.'" *Tripathy v. Schneider*, 473 F. Supp. 3d 220, 226 (W.D.N.Y. 2020) (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)).

# DISCUSSION

## I. The Initial Petition, Count I

Petitioner first alleges that he is entitled to writ of habeas corpus "to prevent the government from removing [him] from the United States when it has no legal authority to do so." ECF No. 1 at 9 (capitalization omitted). Petitioner appears to

challenge the fact that (1) his 2016 removal order only lists Iran as a country for removal, (2) deferral of removal to Iran was granted, "legally preventing [Respondents from] executing" his removal order, and that (3) he has received no "semblance of due process" as to the identity of other possible countries for removal "contrary to the statute and regulations regarding designation of third countries for removal." *Id.* at 8. Petitioner alleges that due process requires him to receive notice of the other countries to which Respondents seek to remove him so that he may have the opportunity to seek country-specific relief. *See id.* at 8–9; ECF No. 14 at 4–5. Petitioner appears to also argue that because Respondents cannot lawfully remove him, and the only reasonable basis for him being taken into custody would be to effectuate a removal order, Petitioner's detention is unlawful. *See* ECF No. 1 at 8–9.

The Court agrees with Respondents that it does not have jurisdiction to adjudicate such a claim. Respondents emphasize 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The Second Circuit has held that this "jurisdictional bar applies equally to preclude . . . an indirect challenge" to a removal order. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).

Additionally, 8 U.S.C. § 1252(b)(9) provides that "'[j]udicial review of all questions of law and fact, including interpretation and application of constitutional

and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order [of removal].'" *Mahdawi v. Trump*, 183 F.4th 103, 114–15 (2d Cir. 2026) (alterations in original) (quoting 8 U.S.C. § 1252(b)(9)). "[A]s to habeas jurisdiction specifically, Congress amended § 1252(b)(9) in 2005 expressly to provide that "'[e]xcept as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28, United States Code, or any other habeas corpus provision, . . . or by any other provision of law (statutory or nonstatutory), to review such an order [of removal] or such questions of law or fact.'" *Id.* (alterations in original) (quoting 8 U.S.C. § 1252(b)(9)). "[J]udicial review of an order of removal" is available only through filing a "petition for review" in a Circuit Court pursuant to 8 U.S.C. § 1252. 8 U.S.C. § 1252(a)(5).

This Court has the authority to review purely legal statutory and constitutional claims regarding the government's detention authority that do not run afoul of an otherwise jurisdictional bar. *See Jennings*, 583 U.S. at 295 (addressing that § 1252(b)(9) did not preclude review in district courts of detention issues that were collateral to or independent of removal proceedings); 28 U.S.C. § 2241(c)(3) (authorizing federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States"). "[A] suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction . . . turn[s]

on the substance of the relief that a [litigant] is seeking." *Delgado*, 643 F.3d at 55 (emphasis omitted).

In Petitioner's response to the First MTD he states, "[i]t should be stressed that [his] first claim (to prevent his removal to Iran in the absence of any lawful authority to do so, and/or to prevent the constructive denial of his opportunity to present a claim for withholding & CAT to a third country) is entirely separate from his second [claim] (namely release from detention)." ECF No. 14 at 5. This Court plainly does not have jurisdiction to resolve a claim for relief that is "entirely separate from" a request to be released from detention.

To the extent Petitioner intended to argue that his *detention* is unlawful because Respondents cannot lawfully remove him and the only reasonable basis for his detention could be to effectuate a removal order, *see* ECF No. 1 at 8–9, this Court also does not have jurisdiction to review such a claim. Although some courts in other jurisdictions have, on a habeas petition, considered and ruled upon whether the government has abided by relevant law regarding removing a noncitizen to a "third country" and/or whether procedural due process requires notice of the identity of a target country for removal and a meaningful opportunity to be heard to make country-specific challenges thereto, *see, e.g., Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *4–6 (W.D. Wash. Nov. 17, 2025) (concluding § 2241 petitioner "is entitled to relief ensuring he receives notice of any country to which ICE intends to remove him and a reasonable opportunity to apply for withholding of removal or CAT protection") (collecting cases), the Court finds that

Second Circuit law bars consideration of such factual and legal questions in this case, *see Mahdawi*, 183 F.4th at 117 (holding § 1252(b)(9) barred habeas jurisdiction where "Mahdawi's habeas petition, unlike a challenge to the length or conditions of confinement, raises legal questions challenging the government's very basis for trying to remove (and thus detain) him." (quotation and alterations omitted)).

Even where a detainee professes to challenge his detention, a district court does not have jurisdiction to address questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States. *See Mahdawi*, 183 F.4th at 114–19; 8 U.S.C. § 1252(b)(9). Respondents' efforts to remove Petitioner to a country other than Iran would be included in "any action taken . . . to remove an alien" under § 1252(b)(9). *See Mahdawi* v, 183 F.4th at 116 ("[E]ven the narrowest definition of "any action taken . . . to remove an alien" would include a removability determination under the [Immigration and Nationality Act] and the prioritization of an individual's removal premised on conduct alleged to be protected under the First Amendment."). It is also clear that the factual and legal issues raised by Petitioner here—challenging the propriety of Respondents' efforts to remove him to another country "without a semblance of due process" and contrary to relevant law—"arises from" Respondents' removal efforts. *See id.*

As in *Mahdawi* and *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026), as favorably discussed by the Second Circuit, any claim of unlawful detention

implicated by Count I here is "identical to [Petitioner's] arguments against removal" and/or is "inextricably intertwined with the claim that removal itself is unlawful." *Mahdawi*, 183 F.4th at 110, 117, 118 (where the habeas petition claimed, "[t]his case concerns the government's retaliatory and targeted detention and attempted removal of Mr. Mahdawi for his constitutionally protected speech," and sought, among other things, that the district court "[v]acate and set aside Respondents' unlawful Policy of targeting noncitizens for removal based on First Amendment protected speech advocating for Palestinian rights," "[v]acate and set aside the Rubio Determination," and order Mahdawi's release); *Khalil*, 164 F.4th at 275 (involving substantially similar facts and arguments by petitioner). Such a claim is barred by 8 U.S.C. § 1252(b)(9).

In sum, the First MTD is granted as to Count I, and Count I is dismissed for lack of jurisdiction.

## II. The Initial Petition, Count II

Petitioner also originally alleged that his detention violates federal regulations, "the statutory basis for post-order detention," and "procedural and due process protections." ECF No. 1 at 9–10 (capitalization omitted). In cursory fashion, Petitioner contends that ICE violated its own regulations by taking him into custody without showing a change in circumstances, a violation of the conditions of his release, imminent removal, or another compelling reason for his detention. *See* ECF No. 3-1 at ¶ 15. Respondents' First MTD argues that the Court does not have jurisdiction to adjudicate Count II because the revocation of his release "was purely

discretionary," and, even if the Court had jurisdiction over Count II, Petitioner is being detained pursuant to 8 U.S.C. § 1231, "authorizing his detention," and rendering his claim "moot." ECF No. 8-3 at 8–12; *see* 8 U.S.C. § 1252(a)(2)(B)(ii) ("Notwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.").

For the reasons discussed in the Court's decisions in *Bustamante Romero v. Bausch*, No. 26-CV-00803-MAV, 2026 WL 1998751, at *3–*4 (W.D.N.Y. July 10, 2026) and *De La Cruz v. Rhoney*, No. 25-CV-6699-MAV, 2026 WL 891658, at *3–*5 (W.D.N.Y. Apr. 1, 2026), the Court finds that it does have jurisdiction over Petitioner's claim that his detention is unlawful because Respondents' violated the law in revoking his release. *See also Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017) ("While ICE does have significant discretion to detain, release, or revoke aliens, the agency still must follow its own regulations, procedures, and prior written commitments in the Release Notification."). The Court, however, finds that Petitioner has failed to state a claim for relief.

Petitioner's arguments in support of this claim are sparse. *See* ECF No. 1. The initial petition does not discuss the requirements of any statutes or regulations

and merely states that Respondents "violate[d] its own regulations (namely 8 C.F.R. § 241.4 and 241.13)" in arresting and detaining him in June 2025. *Id.* at 7. Petitioner's opposition to the First MTD focuses on Respondents alleged violations of 8 C.F.R. § 241.4(l)(2). *See* ECF No. 14 at 7–10. The Court discussed this regulation at length in its July 2026 decision in *Bustamante Romero v. Bausch*, 2026 WL 1998751—a case in which Respondents had never issued an OSUP to the petitioner, had never provided her with any notice of their revocation of her release, nor an informal interview. *Bustamante Romero*, 2026 WL 1998751, at *5–*6.

Briefly, 8 C.F.R. § 241.4(l) broadly identifies the noncitizens within its scope as any noncitizen "who has been released under an order of supervision or other conditions of release." *Id.* at *5. Petitioner here was thus entitled to—and the government was required to comply with—the procedural protections of § 241.4(l) in order to lawfully revoke Petitioner's release. Section 241.4(l) provides that "[u]pon revocation," the person released on conditions thereunder "will be notified of the reasons for revocation of his or her release or parole," and requires that such person "be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l).

Unlike the *Bustamante Romero* case, Petitioner here has not sustained his burden to show that Respondents failed to comply with 8 C.F.R. § 241.4(l) in deciding to revoke his release in favor of detaining him. *See Walker*, 312 U.S. at 286. The record reflects that on the day he was taken into custody, Respondents served

Petitioner with a Notice of Revocation of Release and provided him with "a pre-detention interview regarding his revocation of his Order of Supervision." ECF No. 8-2 at 32–34. *Cf. Bustamante Romero*, 2026 WL 1998751, at *5 ("After reviewing the record before it, it is evident that Petitioner did not receive the requisite notice and opportunity to be heard under § 241.4(l)."); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) ("Therefore, consistent with the requirements of section 214.4, ICE was required to afford Ceesay at least an informal interview. And for two reasons, ICE's failure to afford Ceesay such an interview violated his right to due process."); *Rombot*, 296 F. Supp. 3d at 387 ("Upon revocation, sections 241.4 and 241.13 both require ICE to provide "an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation. Nothing in the record shows that Rombot was given this interview." (citations omitted)).

Although Petiitioner's initial petition loosely mentioned a violation of his constitutional due process rights, both procedural and substantive, *see* ECF No. 1 at 9–10, Petitioner did not make any attending legal argument in his initial petition or in his opposition to the First MTD. Accordingly, Petitioner has not demonstrated a basis for habeas relief on such grounds.

Respondents' First MTD as to Count II is also granted, and Count II is dismissed for failure to state a claim.

## III. The Supplemental Petition, Count III

Though procedurally unconventional, the Court accepted the parties' agreement to permit the filing of an amended petition raising a supplemental

claim—for indefinite detention under *Zadvydas*. Respondents moved to dismiss, arguing that Petitioner had not demonstrated good reason to believe there was no significant likelihood of removal in the reasonably foreseeable future. ECF No. 17-1 at 3–4. Plaintiff filed an opposition thereto. ECF No. 19.

In *Zadvydas v. Davis*, the Supreme Court determined that 8 U.S.C. § 1231(a) authorizes detention after a final order of removal for a period "reasonably necessary" to effectuate the noncitizen's removal from the United States. *Zadvydas*, 533 U.S. at 699–700. The Supreme Court held that detention of a noncitizen for up to six months under § 1231 is "presumptively reasonable." *Id.* at 701. After this six-month period, the Court explained, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.*

Petitioner was detained pursuant to § 1231 on June 23, 2025. His supplemental petition was filed on November 18, 2025—less than six months later. Many courts, including the undersigned, have dismissed *Zadvydas* claims filed within the presumptively reasonable six-month period as premature even where the court's Decision and Order is issued after the presumptively reasonably period. *See, e.g.*, *Loachamin v. Kurzdorfer*, 792 F. Supp. 3d 353, 363 (W.D.N.Y. 2025) (Vacca, J.); *Dao v. Bondi*, No. 25-CV-5 (JLS), 2025 WL 1005579, at *2 (W.D.N.Y. Mar. 26, 2025) ("[F]ederal courts generally hold that the six-month post-removal period must have expired at the time the detainee's [§] 2241 petition was filed in order to state a

claim under Zadvydas." (quotation and alteration omitted)); *Gomez v. Whitaker*, No. 6:18-CV-06900-MAT, 2019 WL 4941865, at *1, 5 (W.D.N.Y. Oct. 8, 2019) (dismissing petitioner's *Zadvydas* claim as premature, where the petition was filed before the six-month period lapsed, but the court's decision was signed after that period).

Respondents' Second MTD does not argue the supplemental claim is premature. ECF No. 17-1 at 3–4. Given the length of time that has elapsed between the parties' substantive arguments regarding whether there is a significant likelihood of removal in the reasonably foreseeable future, judicial economy and fundamental fairness counsels against dismissing Count III without prejudice only to address an anticipated newly-filed petition. Instead, the Court finds it appropriate to deny the Second MTD and require the parties to supplement the existing record on Petitioner's *Zadvydas* claim.

**CONCLUSION**

In sum, Petitioner's Count I is dismissed for lack of jurisdiction, Count II is dismissed for failure to state a claim, and Respondents' motion to dismiss Count III—Petitioner's *Zadvydas* claim—is denied to facilitate efficient supplemental argument on the current state of Petitioner's intended removal.

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Respondents' First MTD, ECF No. 8, is GRANTED; and it is further

ORDERED that the initial petition, ECF No. 1, is DISMISSED; and it is further

ORDERED that Respondents' Second MTD, ECF No. 17, is DENIED without prejudice; and it is further

ORDERED that, **on or before October 16, 2026**, Petitioner shall file a supplemental memorandum of law in support his claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), (Count III of ECF No. 15); and it is further

ORDERED that, **on or before October 23, 2026**, Respondents shall submit a supplemental return to Petitioner's remaining pending claim under *Zadvydas*; and it is further

ORDERED that Petitioner shall file any written response thereto **on or before October 30, 2026**.

SO ORDERED.

Dated: September 29, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge